IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | NO. 10-742-1 |
| VIBOLL MARK | |

### MEMORANDUM OPINION

Defendant Viboll Mark moves for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), in consideration of the dangers posed by COVID-19. For the reasons that follow, Mark's motion will be denied.

### I.   BACKGROUND

Mark has served 118 months of a 150-month prison sentence for Hobbs Act robbery, conspiracy to commit Hobbs Act robbery, and using a firearm during the commission of a crime of violence, as well as a concurrent 8-month sentence for possession of a controlled substance while he was incarcerated. In July 2020, he was transferred from FCI Loretto, in Loretto, PA to FCI McKean in Lewis Run, PA. Upon arrival, Mark was quarantined for 14 days, monitored for symptoms of COVID-19, and tested negative for the virus.

On June 29, 2020, Mark filed a motion requesting that he be resentenced to time served, or a sentence of time served followed by a period of supervised release not to exceed his original sentence, pursuant to 3582(c) which motion was denied for failure to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A) (explaining that a defendant moving a court for compassionate release must first "ha[ve] fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf, or the lapse of 30

1

days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier").  Mark thereafter applied for Compassionate Release/Reduction in Sentence Consideration from the Warden of FCI McKean, and the Warden denied his request for failure to demonstrate a qualifying medical reason.  Mark then filed this subsequent motion for compassionate release, for largely the same reasons in his first motion.

Mark describes himself as suffering from a "low immune system," which he says previously caused him to contract the shingles virus, and Attention Deficit Disorder ("ADD").  He was also diagnosed with latent Tuberculous ("TB") around 2012.  Additionally, Mark cites to statistics indicating that, as a Cambodian person, he is at a higher risk of severe outcomes if he contracts the virus.  According to Mark, these preexisting medical conditions place him at a high risk of dying or suffering severe health effects should be contract COVID-19.  Moreover, Mark is critical of the BOP's response to the virus, suggesting that jails and prisons are "breeding grounds" for COVID-19.  Mark contends that taken together, his underlying health conditions, the dangerous conditions of prisons, and the fact that he has served a large portion of this sentence and shown rehabilitation while incarcerated constitute extraordinary and compelling reasons to grant him relief.  The Government disagrees, arguing that none of Mark's medical conditions place him at an increased risk for COVID-19, and that even if they did he poses a danger to the community due to the violent nature of his offense and therefore should not be released.

II. **DISCUSSION**

The First Step Act's amendments to Section 3582(c) "allow incarcerated defendants to seek compassionate release from a court on their own motion, not just through the Bureau of Prisons."  *United States v. Thorpe*, 2019 WL 6119214, at *1 (C.D. Ill. Nov. 18, 2019); *see* 18

U.S.C. § 3582(c)(1)(A) ("[T]he court, . . . upon motion of the defendant . . . may reduce the term of imprisonment. . . ."). Specifically, provided the defendant has exhausted his administrative remedies, Section 3582(c) permits a district court to reduce a defendant's sentence "after considering the factors set forth in section [18 U.S.C.] § 3553(a) [1] to the extent that they are applicable, if it finds that . . . extraordinary and compelling circumstances warrant such a reduction . . . and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Here, Mark has exhausted his administrative remedies, and his motion is therefore ripe for consideration.

According to U.S.S.G. § 1B1.13, which is the Sentencing Commission's policy statement on Section 3582(c)(1)(A), a defendant's medical condition may constitute a basis for release. Section 1B1.13 defines a condition as "extraordinary and compelling" if it "substantially diminishes [defendant's ability] to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." *See* U.S.S.G. § 1B1.13 n.1. It is the defendant's burden "to prove extraordinary and compelling reasons exist." *United States v. Adeyemi*, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020).

Mark has not shown that his health conditions fall into this dire category. Mark asserts that he suffers from a "low immune system," as evidenced by a shingles infection he suffered in

---

[1] Section 3553(a) directs a sentencing court to consider:

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
    (2) the need for the sentence imposed—
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

3

2016, ADD, and exposure to TB.  Mark also asserts that "as a Cambodian male," he is at increased risk of having a serious outcome if he contracts COVID-19.  However, Mark has presented no evidence that his conditions are not being appropriately managed by the prison, much less that his conditions "substantially diminish[]" his ability to "provide self-care."  *See* U.S.S.G. § 1B1.13 n.1.

First, none of these conditions are listed as increased-risk factors for a severe COVID-19 outcome.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.[2]  Second, Mark does not describe any symptoms that he suffers related to ADD or his "low immune system," assuming his "low immune system" is a real medical condition rather than mere speculation based on his previous shingles diagnosis.  Third, Mark's exposure to TB does not appear serious or life-threatening.  Mark claims he has suffered night sweats, weight loss, shortness of breath, and fatigue for the past four years related to his exposure to TB.  Despite his diagnosis of latent TB infection about eight years ago, nothing in the record suggests that Mark was treated for this condition prior to August 4, 2020, nor that the prison cannot manage his mild reported symptoms.  *See*, *e.g.*, *United States v. Troy Holmes*, 2020 WL 4504440, at *2-3 (E.D. Pa. Aug. 5, 2020) (denying compassionate release where defendant's symptoms were "mild and being managed effectively"); *United States v. Brown*, 2020 WL 4345077, at *3 (W.D. Pa. July 29, 2020) (discussing latent TB and concluding that it is not a risk factor).  In fact, Mark did not require any treatment for fever, coughing, or shortness of breath during his two-week quarantine when he arrived at FCI McKean.  Finally, Mark's race is not a medical condition.  While the CDC has cautioned racial and ethnic minorities to take extra

---

[2] Mark's purported "low immune system" would not qualify because he does not indicate that it is related to a solid organ transplant (increased risk factor), or from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines (possible increased risk factors).

precautions as it relates to COVID-19, the data offered by Mark does not support the conclusion that Cambodian men have a physical, as opposed to societal, risk of a severe reaction to COVID-19.  *See United States v. Green*, 2020 WL 3642860, at *4 (W.D. Pa. July 6, 2020) ("Current data suggests that African-Americans have been disproportionately affected by COVID-19 hospitalizations and deaths. It is unclear, however, whether race is an independent risk factor or whether the adverse outcomes are caused by other factors[.]") (citing https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html (updated July 24, 2020)).

Moreover, Mark's general concerns about how prisons are handling the spread of COVID-19 are not directed towards his current institution of confinement, FCI McKean. Whereas the government reports that FCI McKean has had only three inmates test positive for COVID-19 in the last six months, all of whom later recovered, Mark offers no specifics regarding FCI McKean.  While COVID-19 presents a risk to inmates—as it does to all of us, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify" release independent from statutory considerations, "especially considering the [Bureau of Prison's] statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).  Otherwise stated, "the existence of some health risk to every federal prisoner as the result of this global pandemic does not, *without more*, provide the sole basis for granting release to each and every prisoner within our Circuit." *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) (emphasis added).  Accordingly, Mark's generalized concern about contracting COVID-19 because he is incarcerated is insufficient to warrant compassionate release.

In short, Mark does not present "an extraordinary and compelling reason" that would support his compassionate release and his motion will therefore be denied.[3]

An appropriate order follows.

September 29, 2020                                BY THE COURT:

                                                                       */s/ Wendy Beetlestone*

                                                                       **WENDY BEETLESTONE, J.**

---

[3] Because Mark fails to demonstrate an extraordinary and compelling justification for his release, there is no need to consider the factors under § 3553(a). *See* 18 U.S.C. § 3582(c) (directing a court to consider the Section 3553(a) factors before reducing a term of imprisonment "*if* it finds that extraordinary and compelling reasons warrant such reduction" (emphasis added)).